Mr. Peabody, good morning to you. Welcome to the court in San Jose. Please proceed. Good morning, Your Honor. May I, may it please the court, begin by apologizing. I've picked up a bad head cold in my travels, and I may have a coffee spell. At least we can hear you very well, so that's a good start. Thank you. We'll get you some water. Thank you. May it please the court, this is the case in which the court below held that the claims of Park Terrace Limited and Mullifer West Limited were foreclosed under the statute of limitations. And that turns on whether the letter of response from the government agency constituted a breach. No, Your Honor, I think the, I think, I mean, that is one of the arguments. But my principal argument this morning, I mean, we argue that in the, in the, in the brief. But my principal argument this morning is that the letter which was written, the two letters are the same, one of them is reprinted on page 879. This letter will serve as a request to pay off the remaining mortgage balance for the above referenced property. Please contact me at your earliest convenience to review that, what procedure should be followed regarding the pay off of the loan mortgage. Now, clearly the response didn't say go ahead and pay it off and do what we want to do. But I respectfully submit that under the Supreme Court's decision in Francona, the test is whether or not that letter constitutes a tender. And I would respectfully submit that it does not. The court in Francona, the United States Supreme Court in Francona, when looking at this issue and finding that the statute… Well, I don't understand why it wouldn't be a tender then. The letter says we want to pay early. And the second sentence seems to just request procedural information about who to send a check to. Well, I don't know… It's not conditional. It's like we might want to pay early if such and such and such and such. Or we're exploring whether we want to pay early. And the sentence number one seems to clearly say we do want to pay early. And sentence number two, as I'm translating it, simply says how do we do so? I think, Your Honor, that under the accepted definitions of tender, and I quote in Williston on contracts definition in our brief, stating in alternate terms, tender is an unconditional offer of payment, consistent… Yes, that's my whole point. What is conditional about sentence number one? But it's got to consist of the actual production of a sum, not less than the amount due. Or sentence is another way that the… Well, it says the remaining mortgage balance. Yeah, remaining mortgage balance. You've got to have a check. There's no check. There's no money tender. And that's what the accepted meaning of tender is. When I go back and think about my first year in law school, Your Honors, and in contracts, and I remember my law school professor saying, when we discussed how do you tender, it's a good way of checking under the nose of the recipient. We all agreed that that's sufficient. Whether it's required under every circumstance may be less clear. Well, Your Honor… We all agreed that no check was attached. So if a check being attached is a requirement, then you win on the tender issue. But it's not so clear, at least to me, that given the unconditional nature of the assertion in sentence one, that the absence of a check is fatal. Well, Your Honor, we respectfully submit that it is. I would like to point to a couple of cases that have considered this issue. In a case in the United States District Court for the District of Rhode Island, Butler v. Resident Care in Ovation at 241 bankruptcy 37, 1999 decision. In that case, one of the parties to the bankruptcy action, in an attempt to persuade the bankruptcy court that their tender made the contract non-executory, the court says, in this case, RCI…  No, Your Honor. All right. You have just a follow-up letter with a full citation. Yes. Yes, Your Honor. In this case, RCI makes the argument… No chance to respond for the government, because this is a little out of order, out of ordinary order to be bringing up new cases and oral arguments that are neither in the opening brief nor the reply. Go ahead. The court says, in this case, RCI makes the argument that delivery of a photocopy of a cashier's check in the amount of the remaining purchase price constitutes a tender. It thus argues that the contracts were not executed during subject to rejection because RCI performed this obligation. This argument is totally unfounded, since it is clear that RCA, RCI, failed to tender a check that could be cashed. So the holding of that case is a copy wouldn't do. You need the original attachment to defend it. Yes. If that principle governs, you win. We certainly have to concede that. Aren't you taking an inconsistent position from what was alleged in the complaint, however? In other words, in the complaint, the allegation was that but for the government's conduct, plaintiff would have terminated their contract by pre-paying their mortgage. Your Honor, this case was decided on summary judgment, and we had the opportunity of getting the documents and the government documents, and at that point, clearly, there was no tender. And so it may be inconsistent with some allegations in the complaint, but we're at the summary judgment level. May I add anything? Let me clarify. Is it your position there's only one way to tender performance under a contract that requires a demand to be allowed to pre-pay, and that is to tender a cashier's check? I think that's the predominant approach. Predominant, but there are other ways. Well, I think then you look at what must the Supreme Court amend, because the Supreme Court didn't define tender, but in other ways. You said normal contract principles apply. Yes. My question to you is whether or not that is the only means of tender. Yes, Your Honor. We believe that it is the only way under the facts of this case. Does it matter here that we have, I guess, multiple government agencies? Maybe that if you and I each own a company and I tender a check to you made out in the name of your company that no one would have any question about whether that's an adequate tender, but is it even clear to whom the balance of the mortgage dollars would have to be made out as the payee? Is it the Farmers Administration? Is it the Treasury of the United States? Who's the payee of the check? I don't have the mortgage documents in front of me, but I think it's the agency, it's the mortgagee of the property. And the amount was definite and certain at that point, so that the tenderer would know this is the amount I have to offer at this point. Well, it's certainly calculable. It's certainly calculable. By him or by the government? Well, I think it's calculable by either side. You might have a disagreement, and then you could... And I think the law there is you've got to tender at least as much as the other side claims. What about the government's response? It seems to me that Judge Miller seems to have treated the government response as saying, hell no, we're not going to let you pay early because we don't care to, so therefore your rights under the original loan agreement, the contract, are just being cast aside. We don't care. But it's hard for me in reading the letters to see that that's really a fair interpretation of the letters. It looked like they wanted to change the subject and talk about a renewed arrangement over a longer time period with added monetary incentives but also added burdens of not being able to charge mortgage rates and so on. So where in the government's response is there language that could be fairly construed as being a rejection of the tender? No, we won't accept your tender. There is none. There is none. And clearly that's a second prong of our argument, which is that the government never rejected the tender, which of course is also a necessary reading with respect to the Supreme Court test. What about the ability of the government agency to accept the tender? Was it precluded by the statutory amendments? I think they have interpreted it as that. I think that there are some exceptions. If they make a determination, I think under the regulations, that the property is no longer needed for low-income, they can accept it. But beyond that, I think that they are... But under the realistic facts of this time and place, where I take it it's undisputed there was a continuing need for low-income rural housing of the sort involved, that none of those exceptions would apply. That's correct. So in that circumstance, should we conclude that the agency was precluded from accepting the tender, and that everybody knew that, and that therefore even if the tender counted as a tender, the government's letter, however it might have been worded, should be viewed as a rejection because everyone knew that in the end they were going to have to reject it. Your Honor, that leads you to our second argument on this issue, which the court below rejected as being the intention was unimportant here. And that really goes to the issue of what was going on here. And what was going on here was that this was a predetermined procedure in order to get an ascended loan. And there was no intention to prepay the loans at that time. What was intended was to get the incentive loans. Well, what's the evidence of that? There's an affidavit of Mr. Axelrod in the record. Is it undisputed by the government that in order to have a discussion about a follow-up so-called incentive loan, you had to first send a pro forma kind of letter saying, I tender payment of the original loan? Mr. Axelrod's affidavit of testimony was that this is what he was told. No, I understand. He's on your side, right? Yes. Okay. My question to you was, does the government agree or do their witnesses agree that in order to initiate a discussion about a follow-on arrangement, you had to send a tender letter in? Your Honor, I don't think there's any disagreement on that. I think the regulations, I think their documents that were produced here support that. And so, again, going back to Francona, was this really an election to treat the repudiation as a breach or was this only an attempt to get the money that was being offered in the incentive loans? And we respectfully submit the latter and that that's all that was going on. There was no intention here to treat the situation here as an attempt to prepay. In fact, there's a government document in the record here, Your Honor, that says that in determining the amount of the incentive loan, you're not even going to consider whether or not the applicant really wants to prepay the loan or not. But the government recognized that in some of these instances, people didn't want to prepay the loan. Suppose today I had a property in the program and I could get an incentive loan, but I couldn't refinance the property and pay off the mortgage because of the conditions in the credit markets. I still would write this letter if I were Mr. Axelrod in order to get the incentive loans. And so is your argument then that this creates a question of fact that we need to— The second argument, Your Honor, yes, is that either it creates an issue of fact that the courts should decide at trial or the undisputed evidence here is that both sides so clearly understood what was going on that no one would have taken this as an attempt to prepay the loan. So then are you saying it should have been summary judgment in my favor, and if not, then at least it should have been a trial? Yes. Well, we didn't file a motion for summary judgment. No, I understand that, but your position seems to lead to the conclusion that since nothing is disputed, in your view, that summary judgment was appropriate, but it was just given to the wrong side. Yes, yes, but at a minimum— And then your fallback is at a minimum, there has to be a trial if there are disputes. Yes, because that would be an issue. Now, I'd like to just, if I may, Your Honor, turn to the second part of this case, which has to do with the question of to what extent did the court err in not allowing us, assuming that court was right on the statute of limitations, not allowing us to proceed on the rights under the incentive loan, in which the court held initially, there's three opinions on this. The first opinion says, yes, you can proceed on that, even though she held you're out under the statute on the original mortgage loan. Then Judge Miller wrote a second opinion reversing herself, the 1A, holding that we were precluded, saying that the letter, those letters not only triggered the statute of limitations under the original mortgage, but also under the incentive loan. When we pointed out under Rule 59 of motion that she was basically saying to us that we were precluded by a letter for rights in an agreement that didn't exist at the time the agreement was written. She then wrote a third opinion, and I'm not sure what she said in the third opinion, except to say, to deny that she had communicated anything under the incentive loans, but leaving very unclear what would be left for us to proceed with. But you were trying to amend your complaint to broaden its scope. Your Honor, I think that the complaint... Just one step at a time. That's what you were trying to do. Our first position before the court below here is that the complaint did already cover that. Paragraphs 11.2 and 11.4 plead the incentive loans. Paragraph 19 of the complaint refers to all of the agreements, including the incentive loans. And then in paragraph 50, which is the breach of contract claim, it alleges that the result of repudiation is that each claim is deprived of the right to prepay before the expiration of the 40 or 50-year mortgage term. I'm not confused. If your original complaint was already broad enough to cover both the original loans and the so-called incentive loans, then there's no need to amend it. I think your point was that you were wrongly denied the chance to amend it. Which isn't? At the argument, the first argument, the governor raised that it wasn't pleading. We took the position that it was pleading, but we said, if you think it wasn't, then you should give us an opportunity to amend the complaint. We'll make it crystal clear. The court ruled in our favor at that point. It didn't rule on the issue of whether we had raised the issue. It went right to the issue and said, you're okay to proceed on this. So we're the prevailing party at that point. Then, when we had the second argument, we made the same point to the judge. Of course, at that point, we were the prevailing party. We made the second point that if you accept the government's position that we haven't pleaded this, we think we have, you should give us an opportunity to amend. We made that request five times during the course of the proceedings below. Then, out of the blue, the judge did a 180 and then said that she wasn't going to permit us to amend because it would be a complete reformation of the contract. Did you ever submit an amended complaint? No, we never had the opportunity, Your Honor. Did you ever file a motion for leave to submit amendments to the original? No, we were sandbagged, Your Honor, because we were the prevailing party under the initial decision. So at that point, there was no reason for us to proceed with a motion. No, no, of course not. But once the judge indicated that she thought the complaint didn't cover what you wanted it to cover, why wasn't your response to that to simply file a formal motion with an amended complaint attached to either force her to accept it or reject it and thereby have a good issue on appeal? Because her opinion said that we would not be permitted. She ruled without a motion that we could not amend. So her second opinion denied us the right to do that. And that, we believe, is contrary to federal law, which allows amendment. We also think she could have deemed the complaint amended because we had argued this and briefed this and it was clearly an issue that had been litigated in the court below from the very beginning right through to the very end. So she could have done that as well, but she did not. So we believe that she erred there as well. Now, what precisely is the relief you seek here? The relief we seek here is a reversal of the decision of the court below dismissing the claim on the statute of limitations and permitting our claims to go forward. So you would like us to reverse the grant of summary judgment and remand the entire case back to the trial judge? Yes, sir. All right. Let's hear from the governor. Thank you, sir. Ms. Davidson, I'd like to observe that it's a great pleasure on the part of the court to see the head of the very large commercial litigation branch in the Department of Justice, which I believe now consists of over 100, maybe over 200 lawyers who you are responsible to supervise, but to nevertheless see the supervisor come to court more than occasionally and argue a case yourself. So our compliments to you and welcome. Good morning. Please proceed. Thank you, Your Honor. Good morning. I'd like to start with the plaintiff's suggestion that this government program was a charade or was acting as a charade. When Congress enacted a lebut, it was grappling with the very difficult problem of rural housing for poor people. And what Congress did, among many other things, affected these plaintiffs in two ways. First, Congress imposed restrictions upon the contractual right to prepay loans for subsidized rural housing. Congress did that because it wanted to maintain housing and if lenders were allowed to prepay their loans, they would exit the program and there would be a decrease in rural housing. So Congress did impose restrictions, not a complete bar, but restrictions upon the right to prepay loans. At the same time, Congress recognized that those restrictions would cause an economic harm to the borrowers and would force them to stay in the program if they wished to exit. Therefore, Congress provided economic benefits as a quid pro quo to those borrowers who wished to exit the program. In this case, the plaintiffs, the two at issue here, attempted to prepay their loan and the FMHA said, under the restrictions, under the current statutory scheme, you can't prepay, but we can offer you these incentives. Under a completely separate loan agreement, we can offer you even lower interest loans and additional funds. This was not a charade. This was a carefully enacted statutory scheme. But did the statute on its face require tender prepayment under the original loan prior to the ability to take out the incentive loan? What the statute says is that if a borrower offers to prepay, the agency should counter with incentive contracts. So a prerequisite for obtaining incentive contracts is an offer to prepay. It was language written in terms of sort of like encouragement, but was it a requirement that there be a prior tender and a rejection before the incentive loan program could be used? Yes. And if you made a loan to someone who had not tendered, that would be an unlawful loan. The incentive loans are only available to borrowers who attempt to prepay. Now, the Supreme Court did go into the word tender, which has been done prominently in this case. I hope you and Judge Ware may not be exactly the same community. As I understood this question, he was asking whether the statute required an offer to tender. And what I understand your answer to say is the agency is not authorized to offer the incentive unless a tender has first been made. So the effect is the same, but it's not literally a requirement in the statute. It's a matter of authorization from the Congress to the agency. There is an authorization of the Congress to the agency to offer the incentive arrangements to borrowers who want to prepay. In effect, it becomes a requirement that they send in this letter that they want to get an incentive follow-on loan. Yes, which is why it isn't a charade. These incentive agreements were not available to all borrowers, only to those who wanted to prepay, tried to prepay, and wished to exit the program. So it wasn't just a charade. It was a quid pro quo, so to compensate those who wished to exit the program but were required by the statute to stay in the program. But how about the letter by the government officials? It doesn't seem to have language that said, we reject your tender, we won't let you prepay, no way. There isn't any language like that in there that I can readily discern. Let me address the language issues that you talked about earlier. First of all, while the Supreme Court does use the word tender, the phrase that it uses most often is that the government must honor its obligation to accept an offer of prepayment. And what the Supreme Court said would be a breach was the failure to honor the government's obligation to accept an offer of prepayment. That was the holding of the case, and that holding did not use the word tender. In footnote 8 of the Supreme Court's decision, the Supreme Court noted that at least one petitioner has attempted to prepay, and that that one petitioner apparently did not make a tender in the sense or close a check, or the Supreme Court did not note that fact in its footnote where it noted that there was one petitioner that has attempted to prepay. So two of the petitioners here send an unqualified, unequivocal letter saying that they wanted to prepay their entire remaining mortgage. And we have to find that to be at least an offer to prepay. Yes, or an attempt to prepay, and I think it does satisfy that requirement. With respect to the government's response, the government did not expressly reject the offer. However, it counteroffered, which is, in a sense, a rejection of an offer. A counteroffer is certainly never considered an acceptance of an offer. And what the government did was to counteroffer with the incentive payment. So it clearly did not accept. The plaintiffs waited over 13 years. Let me ask you where things stood at that moment. The letter, at least the first letter, says something like, this offer, the government's counteroffer, as you're calling it, is good for 30 days. Doesn't that mean that if the company never responded, that the counteroffer would go away, the offer to pay would stand or be revived? And then what would happen? Well, we don't know because the plaintiffs took advantage of the incentive agreements. But certainly the government waited and never honored its obligation to accept a repayment over a 13-year period before the plaintiffs filed suit. So if there was an obligation on the government's part, as the Supreme Court has held, to accept the prepayment, waiting 13 years certainly was not honoring an obligation to accept prepayment. But this isn't a lattice case, right? You're not depending on lattice. You're depending on the six-year statute of limitations. That's correct. But the plaintiffs waited for 13 years before filing suit. So by any common-sense measure of an obligation to honor under a contract, honor an obligation under a contract, the government did not honor its obligation for a 13-year period, assuming that that offer remained present. And from the government's perspective, the plaintiff's offer was extinguished when they accepted the incentive contracts because that was in the place of the prepayment obligation. Was the incentive contract then conditioned on withdrawing your offer of prepayment? I don't believe it was expressly conditioned. And the government took some, at least in one case, almost three years before it offered the incentive. In other words, there was a letter saying, I'd like to prepay, and several years go by, and the government says, We'd like to offer you this incentive. What was the state of the contract between the parties during the period of time before the government responded? The original contract remained in effect. I thought it was only one year, but assuming it was several years, the original contract remained in effect. I thought the first letter was 1988, and the contract itself was 1991. Okay. I thought that the 91 contract was in response to the 1990 letter, but I'll accept your version of the facts. The contracts remained in effect during that time. But certainly during that three-year period, the government was not honoring its obligation to accept prepayment. What happens to the prepayment right after the government refuses to allow prepayment? Is it extinguished from the contract? No, under the Supreme Court's decision, the borrower can sue the United States for breach. Right, but if you don't and the contract continues, what happens to that right? If you have an ongoing contract and you offer to perform on a particular clause of the contract and the other side doesn't take you up on it, but the contract continues, is there a legal principle that says that that clause is now extinguished from the contract if you don't file a lawsuit? Well, there are certainly principles of waiver that could come into effect if we got past the statute of limitations issue. But in this case, the plaintiffs waited 13 years and 10 years after the filing of the seminal case in Franconia, which put the entire industry on notice that these claims might be filed against the government. So I would have to find an intentional relinquishment by the property owners here of their right to file a lawsuit after six years. They have the right for the six-year period, Tom. And then after that, they would relinquish their rights. I'd have to find some intentional conduct after that on their part to say I can no longer prepay because I've given up that right under the contract. Well, I would view it differently, Your Honor. Under the Supreme Court's decision in Franconia, after six years, their claim would be barred by the statute of limitations. The claim on that prepayment, which would be a different amount of money than later on. If I tender prepayment after year two of the contract and that's refused, wrongfully, but refused and I don't file a lawsuit, what is to say I can't in the tenth or twelfth year of the contract say, hey, I'd like to prepay. It's a different amount of money now. And if they refuse that one filing, yet a lawsuit within six years of that refusal. What takes the right of prepayment out of this contract? The contract doesn't provide a one-time right of prepayment. It's a right to prepay at any time. Well, I don't believe that any plaintiff in this situation has attempted to prepay more than twice, and these petitioners did not attempt to prepay more than twice. The second agreement, which they tried to characterize as an extension of the original agreement, is a separate agreement, and it does not contain any right of prepayment. So we should be careful not to say in any opinion that we issue that having the statute of limitations run on the right of prepayment as to a particular tender extinguishes the right to tender in the future, because these are contracts that still have years to run. I would have to go back and look at the contract again to make sure that there's not some other clause that restricts the right to prepayment so that you could only... I don't know that you can make an offer of prepayment more than once under these contracts. But here there was... Because they accepted the incentive contract, if we got past the statute of limitations point, the government might argue... We haven't gotten to that point yet, because the trial court held that this case was time-barred, but the government might argue that, for example, there was an accord in satisfaction when they accepted the incentive contract. But it wasn't a wraparound. The original contract remains. The incentive contract is a separate contract with its own provisions, its own terms, and it actually ends prior to the end of the original contract. That's correct, but the incentive contract was only made available to the plaintiffs because they attempted to prepay, and the government declined to accept the offer to prepay and instead offered them the incentive contract with very attractive provisions. So if we got beyond the statute of limitations, it's possible that the government would argue that there had been an accord in satisfaction over that prepayment right. With regard to the trial court's decision not to allow an amendment of the complaint, the trial court did not propose the possibility of the plaintiffs filing a new complaint should there ever be a breach of the incentive agreement. The incentive agreement did not contain any right to prepayment, and the trial court held that there had been no breach of that separate incentive agreement and therefore it would be futile to amend the complaint to allow a new claim. How could it be breached? If the government's already turned over the money and there is no other performance for the government to render, then it's hard to see how they could possibly breach it. Well, that's our point, Your Honor. I believe the plaintiffs argued that there could be a future breach. But if there is a future breach, then, of course, they could file a future complaint. But we respectfully submit that it was not an abuse of discretion for the trial court to deny the plaintiff's request to amend their complaint to add an additional claim of a breach of the incentive agreement. For those reasons, as well as those that support that our complaint, we respectfully ask that the court affirm the judgment below. All right. Thank you, Mr. Chief Justice. I'll give you the three minutes you sought to ask before we talk. Your Honor, with respect to the issue of what was intended under this incentive loan program, at pages A384 and 385 of the appendix, we have a document that was produced by the government, guidelines for accepting a fee payment in order to ensure tenant protections. And on page A385, the government says in its documents, in accordance with paragraph 4 of Act of Exhibit A, every borrower who requests that we pay and can document the ability to repay will be offered an incentive to not do so. The size of the incentive will be based on whether this housing is needed by current tenants and other low and moderate income people in the market area and on the loss of the borrower by remaining in the program. The size of the incentive loan, this is on page A386, the size of the incentive loan may not be based on whether the borrower actually wishes to repay or wishes to receive an incentive to not repay or on whether the borrower is a servicing owner. So the government understood that some of these people writing these letters under this program may not have had any idea in the world that they wanted to repay. And that's why we say it's a factual issue that at least we think on the basis of their documents the government is wrong when they say this wasn't, maybe it wasn't a charade, but it was a pre-set dance that everybody knew what the music was and they had to dance to it. What precisely is the factual issue requiring a trial? Well, the fact issue would be whether or not the government understood that this document, Your Honor, was not really a request to repay, not an intention to repay the loan, but was really simply a necessary ingredient in order to get the incentive loan, which is what Mr. Paxman says. So what if the government did have that understanding? How does that change the operation of the statute of limitations? Then, Your Honor, it would not have been that this document, which we don't think is a tender to begin with, would not as a matter of fact have been an election to treat the repudiation as a breach and start the running of the statute of limitations. Because as Judge Ware said, they didn't have to demand prepayment at that time. They could have demanded prepayment any place along the line, over the length of the loan. I also think the government has misstated the Supreme Court's holding in Frank Conant. The Court said at the beginning of its analysis, accordingly, a breach would occur at a six-year limitations period when it commenced to run, when a borrower tenders prepayment, and the government tenders prepayment, and the government then dishonors its obligation to accept the tender, to release its control over the use of the property that secured the loan. And at the very end of the Court's opinion, Justice Ginsburg repeats the holding, concluding that each petitioner's claim is timely filed if, within six years of a wrongly rejected tender of prepayment, and then she goes on to reverse the evidence, and four times within the context of the beginning and end of the opinion, there's analysis of the issue of tender, not on some other standard. With regard to your opinion... Your view is there's never been a rejection of... Correct. ...any offering to prepayment. Correct, yes. Therefore, there isn't yet a breach. That's correct. Well, under Francona, the election would be beginning to bring you a suit. Yeah, that's the position. But that's under a repudiation suit... Yes, yes. ...but not under a breach suit. Yes. Why hasn't there been a subsequent tender? Well, we're waiting to see what happens with this case. We think that we're... We think we should proceed, and we haven't done anything inappropriate here. Your Honor, he asked about the amendment issue at page A121 of the appendix. The judge was questioning Mr. Brilliant on this issue of whether or not we had pleaded properly the incentive money issue, and the court says, what if Blank wanted to amend his complaint to make clear that he was suing on the basis of the expiration of a period of restrictions and elected to sue prematurely, which is what is being allowed, or is allowed under Franconian. I don't know what your problem would be. And the government did not oppose the idea of amendment. The problem is that then we won on the opinion issue after that argument. We were the prevailing party. We had no need to amend. Finally, Your Honor, on the issue of the government argument about accord and satisfaction, if you went on the merits, Judge Miller rejected that defense in what I'll call the Tamerlane IV argument. That was the other group of plaintiffs that were not dismissed on the statute of limitations, and that's 81 Federal Claims, 752, 2008. She rejected and allowed all of those claims to go forward, notwithstanding that Tamerlane, the lead plaintiff, had accepted an incentive loan. But in that case, the lawsuit was started within six years, so we didn't have a statute of limitations. All right. Pleasure to see you both. Thank you so much. Case under review. All rise. The Envoy is adjourned.